All right, counsel. Good morning, your honors. I don't imagine that I'll take as much time. Could you just state your name again for the record. My apologies, Tegor Supermonium on behalf of the appellants in cases 17-56100 and 17-56099. I'll first address the court's, and I'd like to reserve five minutes for rebuttal. First to address the court's inquiry regarding the wage statement claims. There are two claims. There's one for accurate itemized wage statements and one for payment for all wages due. In this matter, the court found that the failure to pay accurate itemized statements and the Private Attorney General's Act claim it felt was related to that were not time barred. In the prior case, the court found that, you know, although the court didn't say that it wasn't time barred, it said that it was preempted. So I think the reasoning suggests that the court didn't believe it was time barred there either. Which one was not time barred? The accurate itemized wage statements and the PAGA claim. Right, right. Now, and the defendants have not filed any cross appeal as to that ruling. But they do make the argument that they were both time barred and said that the representation was that all of the work was completed by a certain date, so that the three years had run long on both of those claims. What's your response? Well, I just, I disagree. So the, it's very clear that the payment, the obligation to provide accurate itemized statements is separate and distinct from the dates of employment. It has to do with the date in which compensation accrues. And because there are continuing residual payments that the statute of limitations flowed and began from when those payments vested. And I think that's clear as to the accurate itemized wage statement claim. The failure to provide wages I believe also stems from the same public policy. The idea is that we want, you know, this goes back to Leviticus, you know, pay people what they're owed. The public policy of these statutes was intended to provide employees payment for their wages. And the fact that the wages may accrue after the employment doesn't deprive them of the right to be paid for what they're owed. But isn't that obligation linked to the actual dates of employment? Certainly not with respect to the accurate itemized statements. Right, but for the payment of wages, isn't that? I believe it's ambiguous. I think the policy underlying the statute allows for a different interpretation. Okay, how about the case authority? The case authority that interprets the labor code, does it give any leeway to make a claim after employment has been terminated? I'm not aware of any cases, one way or the other, interpreting payments that have accrued after the date of employment. Right. Moving on from that, I believe the most salient issue which has not been discussed, which pertains to this matter only, would be the timeliness of the appeal. Now, the union's appeal does not dispute jurisdiction based on the timeliness. It is only the employer defendants who have disputed the timeliness of the appeal. On that wage claim, you may have answered this right now, but I want to just make sure. Why didn't the limitations period for your fourth cause of action commence when the plaintiffs quit or were terminated? That which would have, I guess, rendered your claim untimely. Sorry, I left my note. The fourth cause of action is for the payment of all wages due? Right. But that's what we were discussing. Yes. I asked you for a case. Yes, and I was not aware of a case, one way or the other, my argument was that the public policy underlying the statute is for the purpose of paying all wages due and consistent with that policy. When the statute of limitations runs should be determined from when the payment vests. I'm just trying to figure out on the timing. You don't have any case law supporting? I was unable to find any cases involving payments accruing after the dates of employment. Because the statute speaks in terms of the termination of employment. I recognize that, Your Honor. It says upon quitting or termination. And so I'm just trying to figure out how can any unpaid residual payments that accrue after that point constitute a violation. I think it's ambiguous as to whether their work obligations have terminated here. They were not fired. But the employer continued to use their name and likeness and for various purposes on the show. So they were essentially still providing services to the employer. So I think it's ambiguous as to where to suggest that they were, in fact, terminated. This employment arrangement does not fit into the traditional employment situation. If it doesn't fit, then perhaps that claim does not exist for this type of employment where there is no quitting or termination. Because the statute seems to contemplate a finite end to the employment before the cause of action accrues. I understand that argument. It's a good, fair point, Your Honor. I think there's a slippery slope if we start trying to carve out groups of employees that may not fit the traditional context. Well, we're just trying to figure out what the legislature meant in terms of the statute. So it's not an argument. I'm just trying to figure out whether or not the language of the statute encompasses this claim. I understand, Your Honor, and I recognize that this is a more challenging cause of action for us than, say, the accurate itemized statements. May I grab my water? Sure. Can I ask you about your second cause of action, your failure to endemnify? Forgive me if I could just ask one last question on the previous issue. So if I understand your argument, it is that although the statute seems on its face to bar this particular claim, you think because of public policy it should be read more broadly, as opposed to the possibility that the legislature just addressed the residual type situation when they passed this law. If there's no case law and your argument is that the statute needs to be read in a particular way, you would need to supply us with legislative history, would you not, supporting your interpretation? And you have not done that, have you? I don't believe that's in the record, Your Honor. Okay. Sorry. I just wanted to ask you, because you argue that the district court abused its discretion in dismissing your second cause of action, which is for the failure to indemnify, and you claim it as time barred without giving you an opportunity to amend the claim. Is that right? Correct. That's your argument. And in support of that, you point to Pauli's declaration in which she stated that she was still working for comedy TV in June of 2011. Correct. You pointed to the same fact when arguing to the district court that you should be granted leave to file your third amended complaint, in particular that your second cause of action was not time barred because you could cure any statute of limitation issues on that basis of Pauli's declaration. But you never ended up amending your complaint to include this allegation in your third amended complaint, which is now, you know, the subject of this appeal. So I guess I'm just curious, why didn't you do so? And if you didn't do so, how did the district court abuse its discretion in denying you leave to file yet another amended complaint to cure this deficiency? The only amendments that took place were the initial amendment to add the private attorney general lack claim and the amendment following the appeal. The purpose of the third amended complaint was simply to conform with the court's rulings on appeal. It was not to address alleged deficiencies because those alleged deficiencies were not put forth until the motion to dismiss. So you didn't change it in any other way? No, the only changes that were made were made to conform with what we believe was the court's ruling on appeal. And why wouldn't you, though, have tried to do it at that time? I guess what I'm curious about. You know, we felt that that was... And you'd wait for another time? Well, we would appeal once the deficiencies as to the pleadings in the third amended complaint, which is the first, these motions are the first motions addressing the alleged deficiencies in the amended complaint that we would have an opportunity to see the court's position on the deficiencies. But you were already aware of that deficiency. But it wouldn't make sense to make multiple, you know, amendments based on the court's rulings on these motions to dismiss. And the fact of the matter is that it was the first time that these issues were being pled as deficient. These were alleged deficiencies in our pleadings. And there would have been no prejudice to the defendants, and leave to amend should have been granted. You're down to four minutes, counsel. Okay. Well, to keep it brief, to address the timeliness issue raised by the employer, there was no final judgment here. The remand created a final disposition from which a right to appeal existed, but it was not a judgment in and of itself. And Federal Rule 4 requires a final judgment on a separate form. Now, what happened is up until 2002, it was ambiguous when the time for appeal would run. And so in 2002, the rule changed and said if there's not a final, if there's not a judgment on a separate form, then you have 150, the judgment is considered entered 150 days later. And so we waited the 150 days, and then from that point in time, after that period had elapsed, we determined it was entered, and we filed our appeal. The employer argues that, well, it should have ran from the date of the remand. And if you look at this bankruptcy court decision that is interpreting when a judgment is entered, because it's not a final judgment, because the remand order is relatively curt, that it can be considered a final judgment on a standalone document, and you could appeal from that. But that bankruptcy court decision preceded the 2002 amendment. And if you were to adopt the Schimel's case, it would undermine the public policy of the 2002 amendment, which was to provide finality for when the appeals rise. Otherwise, appellants are left in this gray area where they need to determine, well, does the remand order have enough language to constitute a final judgment, or is there insufficient language such that I need to wait the 150 days? That type of uncertainty was exactly what the 2002 amendment was meant to address. And for that reason, we believe our appeal is timely. I do have a question. What's the status of the comedy.tv action right now in state court? The comedy.tv action is in state court only as to the employer defendants, and it's been waiting for the ruling from the ninth surrogate to determine how to proceed. Can we safely assume nothing's happened there? Yes. All right. Thank you, counsel. Are you all split in time again? All right. Lisa Deminovich on behalf of SAG-AFTRA. Can we go back again to the issue that we were discussing when you first were arguing? Your adversary says there's nothing to show that the settlement went back in time to the claims that were otherwise barred by the statute of limitations, and or even if there were, the union would have been in a better bargaining position if those claims had not been blown. And so at least on the face of the complaint, we cannot deny that claim because of the lack of prejudice, for lack of a better way of putting it. What about that? So there is information in the record that I was going to direct you to. So the first is the settlement is in the record. In this case, it would be at 513 through 517. In the prior case, it's at 523 through 527. And also in the prior case in the record at 588 and 589 is the letter from the union explaining the settlement agreement to the plaintiff's counsel. And explains, in fact, that there's the basis of the discounting. And what's critical that you know that it's not based on untimeliness is the fact that if that were the case, some people would have the performers in the earlier episodes or episodes that had the re-airing earlier in time presumably would have received less. In other words, there wouldn't have been an even-handed discount if it were truly based on untimeliness. And that did not occur here. And under Demetrius, we know that the plaintiff must allege facts tending to exclude the possibility that the defendant's explanation is true. And the only thing that they cite here that would go against the assertion about financial issues with the employer is that the creator purchased an expensive home in 2012, two years before we're looking at the company's financial situation. And we're in L.A., everybody's house poor. So, I mean, this idea that just one person, you know... So, you know, under Demetrius, we know not only that that's not, that they haven't pled facts to exclude the possibility of the defendant's explanation, but also under Demetrius we know that there's not a leave for amend, that they've had plenty of opportunity to get their case together and appellants rely on Smith v. Lopez, but in that case it was a pro se plaintiff and it was a first time up. Here, the first amended complaint, the essence of it is very similar to the third amending complaint. And it's important that even if they had pled sufficiently under Iqbal, Tuomly, Demetrius, et cetera, actual allegations more than mere conclusions about bad faith or discrimination, that the underlying claim is still time barred us to us. They are citing that under their theory, the very first time the union missed filing the grievance for the residuals payments, that forever the union could never fix it because there would be that weakened bargaining power and all these other claims. But if that were the case, then the, for the comics unleashed, which is a prior case, I apologize, but under that case the services were rendered in 2007, so the first reerring in 2007 means that the first, the claim should have been filed in 2007-2008. And under DFR, there's an intentionally short six month statute of limitations. So in that case, if it's true under their theory that you have to immediately file and forever not immediately file, then their DFR claim needed to be filed against the union in the first case back in 2008. And in the second case, the services were rendered in 2009, the first residual payment missed in 2000, as late as 2010. That claim should have been filed against the union in 2010. Instead it wasn't filed until 13. We're talking about when the union should have pursued the claims against the employer. So that's kind of a misapplication. To talk about when the claim should have been filed against the union, there could have been, it could have been made clear that these claims were included if there had been a specific bargaining to take care of all of the claims that are alleged to have been lost. So the plaintiffs would not have that argument if there had been a specific negotiation and a specific amount paid for those claims and if they were designated as such and settled it. If I may, I was just speaking to the idea of remand, that it would, that they can't say that it's not, that it wouldn't be, that they could cure it, these defects on remand. We're asserting it would be futile. That was the point. Where in the settlement agreement is there language that supports your argument that the timeliness issue was not a concern? Well, it's, it would be both the letter explaining it as well as that there's nothing contrary in the terms of the settlement. Okay. Let's start with the settlement agreement. Where is language in the settlement agreement that supports your argument that timeliness was not asserted by the employer? Well, I guess there's no affirmative language that discusses the timeliness. All right. So you said 588 and 589 was the letter explaining the settlement? That's correct. In the 56057 excerpts of record. The one that we're in now? No, I'm sorry. Okay. So. It was provided as an exhibit to. I can go back to the other case. Let's just see here. 588 and 589. Would you point me to the language in that letter that you are saying supports the theory that timeliness was not a concern? That it was not an issue to the employer? If you look at the second paragraph at the bottom of 588, the settlement represents 74.6% of the total calculated to be owed to the producers. The union agreed upon that discount based on its judgment about the difficult financial position the producer was in during the period of the agreement's proceeding, consideration of the alternatives to settlement such as seeking an arbitration award that could have led to bankruptcy or made it more difficult for a producer to obtain future funding to cover both the past liability and the future production costs and the desire to allow producers to continue their operating going forward in the interest of the future income to members. Right. But it doesn't talk about timeliness, whether or not timeliness was a concern. I mean, it talked about the alternatives, the funding, but it doesn't talk about whether or not timeliness of the claim was a consideration for the settlement. That's correct. But under Marquez, the union doesn't have to explain other things. I mean, it's explaining what the basis of it. And I would like to point to. But you made the representation that the record supports the notion that timeliness was not a concern in the settlement. So we're looking for confirmation of that. So I guess a question, I don't know if this is in the record or not, that 74 point whatever figure was 74% of some larger figure which might or might not have gone back to the earlier time. Do we have anything in the record that tells us which it is? It said the total calculated to be owed by the producers. How was that calculation made? I'm looking where in the record it would affirmatively state that. I mean, it's not pled that, in fact, it represents a smaller portion. And they have the obligation to keep it as such. It's silent, really. Right. So, I mean, in some ways that would be dispositive, I think, if we had, if we knew that the total, the 100% that this is 74% of, is a figure that goes back to the very beginning, which is, I take it, what you believe, or not. But we don't know that on the record. Right. But it's not pled what 100% would be, and therefore that it's not pled such that it would be a larger figure. But we know either way. It is pled that, the issue is that the union caused loss to these employees because they were never compensated for, they lost the ability to be compensated for damages that were owed before the union acted. So that's why this issue is important. Because if the union went back to those claims and included them in the settlement, then those claims would not be viable. On the other hand, if the settlement did not reach back and include those claims, the cause of action is still viable. That's why we were trying to figure out what the settlement encompassed. I understand. And the claims are in the record, in our supplemental excerpts of record one, and then the other one is in the as well. I'm sorry, I can't find the site immediately. But the claims were intended to go back. And I want to emphasize that while the party cited Humphrey v. Moore in their papers, I would like to direct the panel's attention to the concurrence by Justice Goldberg and Justice Brennan in that decision, because both of those are the two labor lawyers who have sat on the Supreme Court, with Justice Brennan on the management side. And they wrote that the importance of unions, particularly when you're talking about a benefit that is a concerted exercise of the right to collectively bargain, which is again this case, the residuals, and the importance of not putting undue restraints upon the contracting parties and importing other trial-type hearing standards or conceptions into this, that the union and the employers must be free to look at the economic exigencies of what's going on, which is what is cited to as the basis for the discount, that it's never a shortened time frame that's attributed to the amount. Counsel, you've exceeded your time. Thank you. Paul Brenner again for the employer defendants and appellees in this case as well. So in this case, we've talked about 56057. This is 56099 involving the show Comedy TV, and there are a couple of key distinct differences between this appeal and the other one that we talked about earlier, the main one being that we think there's a serious issue of appellate jurisdiction in this case, and that being that the notice of remand was issued 30 days after the remand order was entered, and under the So your adversary says it really is 180 days because that wasn't a separate order, et cetera. What about that? What about that? Well, you know, the appellate relies on Harmston for that argument, but Harmston is not dispositive of that issue because Harmston was a very different case. In this case, for the reason, the issue is whether the remand order in this case satisfied the requirements of a separate document under federal rule of appellate procedure 4, and in this case, it did because it was a short decision, fairly conclusory, a summary decision that included no opinion, no analysis. It was just a four-sentence order that made it very clear that the district court was separating itself from the litigation, and this was going to be its final act in the matter. In fact, the clerk's record that was entered right after the order remanding the action to state court was issued stated in the clerk's record, case terminated. It could not have been clearer after the district court issued the remand order that this could not have been the case. This case, as far as the federal court was concerned, was over, and that satisfies the test of a separate document under rule 4A. I'm not sure I'm following you because it seems like under rule 4A1A of the federal rule of appellate procedure, a notice of appeal must be filed with the district court within 30 days after entry of the judgment or order appealed from, and here the district court's motion to dismiss orders in the comedy TV case, which one you're talking about, is that the one you're talking about? Yes. Okay. Case 8011 before the district court. Okay. Became or seems like would have become appealable as soon as the court entered its remand order, which would have been the final, an appealable order. Right. That was an appealable order, which Harmston itself said. Right. I'm sorry. But here under federal rule of appellate procedure 4A7A2, it seems like plaintiffs then had 180 days from the entry of the remand order until August 14, 2017 to file their appeal. Well, that, I would agree with you if the remand order didn't satisfy the test of the first bullet point under 4A17, or sorry, 4A7 sub 2, there are two bullet points there, and it says that the, it talks about when the earlier of these events occurred. And our position is that the judgment, the first bullet point applies here. The judgment or order is set forth on a separate document because the remand order in this case satisfies the test of a separate document. How? Well, because it was, it was a terse order that constituted a final decision and gave no detailed explanation of the court's real reasoning. It clearly evidenced the district judge's intention that it be the court's final act in litigation. And that's what is different about this case and Harmston. Harmston was a case in which the remand order contained, was a five-page order that contained analysis and a review and discussed, you know, three pages of analysis, citations to cases, if I'm recalling correctly. That wasn't the case here. But it's not a, the problem is there has to be a judgment. The remand order was not a judgment. It says every judgment, an amended judgment, must be set out in a separate document under Rule 58A. Well, right, except that Rule 4A-7-2 says the judgment or order is set forth on a separate document. And in cases like Schimel's and the other cases we've cited. Schimel's was. That was not a remand case. Well, and also it was before the amendment to the rule. So it really, they were writing in a different context, yes? Well, that's true. But, you know, this is a, I think this is an issue of first impression, at least in this circuit. I don't think so. I think it's well established if there's not a separate judgment, then the time begins to run out, and then you have the 150 days, and then you have the 30 days, and it's 180 days. We have pretty established law on that point. Well, I'm not aware of that. I think that the Harmston case was a case in which the notice of appeal was filed well over 150, after 180 days after the remand order. So the court didn't, this court didn't have occasion to reach the question of whether the remand order in that case needed to meet the 30-day rule. In this case, a very different case. We think that the remand order clearly met the test of a separate document. And Federal Rule of Civil Procedure 58 talks about a separate document rule. It doesn't need to include a judgment. It can be the order of appeal. Do you have a case that postdates the amendments to the rule of appellate procedure? The cases that you cited were before the rule, or they were related to special bankruptcy rules. Do you have a case post-amendment that addresses this point and agrees with you? No, not besides Harmston, which, you know, as I said, makes the point that the remand order constituted a final decision. And, you know, my point is, Harmston didn't hold that you always need a separate judgment, or that the remand order can never satisfy the separate document requirement. And in this case, we think it does, because the remand order was very different from the one in Harmston, and it's within the test that courts have laid out for what meets the definition of a separate document. All right. Thank you, counsel. You have a seat at your time. I'll be very brief, mostly because I don't have much time. I just want to emphasize the point that how far the settlement stretches back is not dispositive on the issue. The issue is whether or not there are harm based on the union allowing the statute of limitations to lapse, which could result in them having to take a discount on the settlement, even if they recovered some money stretching back. What is your ñ what allegation have you made in your ñ what is the third amended complaint? Of the prejudice that occurred because it wasn't taken account of in the settlement. Well, the third amended complaint clearly says that the employees did not receive full compensation based on the union allowing the statute of limitations to lapse. And I would also note that although, you know, there's no stipulation in the record that the employer waived time limits, there's no evidence that the employer waived time limits in the record. And this goes beyond the record, but just hypothetically, if the 100 percent on which the 74 percent was calculated goes back to the very beginning, including the claims that were otherwise untimely, then we would know that they at least considered all and settled all the claims. Your backup argument is that, okay, but they wouldn't ñ the union wouldn't be in as great a bargaining position. But that sounds extraordinarily speculative in a situation where the union basically had an iron-tight argument for 100 percent, but because, as they said in their letter, they were afraid that the company would go into bankruptcy, they agreed to settle for 75 percent. So I don't see how it could have made any material difference or any difference at all in the negotiations. I'll just respond and then I'm out of time. But the question is the characterization of whether they did in fact receive 100 percent of the amount that they calculated. And at the pleading stage, we're not required to accept the defendant's assertion that they recovered 100 percent. We're entitled to discovery and a test of the veracity of that characterization. A retroactive characterization that allows for, you know, the union to avoid culpability or liability is not what the case law supports. And I would, you know, urge the court ñ your fact that there was an injury here. And there's certainly additional facts that we could plead. If you look ñ you know, I'm going outside of the record here, but if you look at the way that they calculated the residuals, they don't include things that go back to a certain period of time. They don't apply the higher after-network code, which is the amount that they should have recovered. They ñ you know, there's other facts outside the record, which we certainly could include that would bolster the pleading. But we felt it was sufficient.
judges: Rawlinson, Murguia, Rakoff